# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RECEIVED

JUL 6  2005

CHAMBERS OF
JUDGE LAMBERTH

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| *Plaintiff,* | ) |

Civil No.:

CASE NUMBER  1:05CV01345

JUDGE: Royce C. Lamberth

v.

ALLTEL CORPORATION and
WESTERN WIRELESS CORPORATION,

DECK TYPE: Antitrust

*Defendants.*

DATE STAMP: 07/06/2005

FILED

JUL - 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PRESERVATION OF ASSETS STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Preservation of Assets Stipulation and Order:

A.  "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B.  "ALLTEL" means defendant ALLTEL Corporation, a Delaware corporation with headquarters in Little Rock, Arkansas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Cellular One Group" means the Delaware general partnership, with headquarters in Bellevue, Washington, engaged in the business of licensing and promoting the Cellular One service mark and certain related trademarks, service marks, and designs.

D. "Cellular One Group Assets" means all legal and economic interests Western Wireless holds in the Cellular One Group. Cellular One Group Assets shall include all right, title and interest in trademarks, trade names, service marks, service names, designs, and intellectual property, all license agreements for use of the Cellular One mark, technical information, computer software and related documentation, and all records relating to the divestiture assets.

E. "CMA" means cellular market area which is used by the Federal Communications Commission ("FCC") to define cellular license areas and which consists of Metropolitan Statistical Areas ("MSAs") and Rural Service Areas ("RSAs").

F. "Divestiture Assets" means the Wireless Business Divestiture Assets and the Cellular One Group Assets.

G. "GSM" means global system for mobile communications which is one of the standards used for the infrastructure of digital cellular service.

H. "Multi-line Business Customer" means a corporate or business customer that contracts with Western Wireless for mobile wireless services to provide multiple telephones to its employees or members whose services are provided pursuant to a contract with the corporate or business customer.

I. "Transaction" means the Agreement and Plan of Merger between ALLTEL and Western Wireless, dated January 9, 2005.

2

J. "Western Wireless" means defendant Western Wireless Corporation, incorporated in the state of Washington with headquarters in Bellevue, Washington, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

K. "Wireless Business Divestiture Assets" means, for each mobile wireless telecommunications business to be divested under this Final Judgment, all types of assets, tangible and intangible, used by defendants in the operation of the mobile wireless telecommunications businesses to be divested. "Wireless Business Divestiture Assets" shall be construed broadly to accomplish the complete divestitures of the entire business of Western Wireless in each of the following RSA license areas as required by the Final Judgment and to ensure that the divested mobile wireless telecommunications businesses remain viable, ongoing businesses:

    (a)  Arkansas RSA-11 (CMA 334);

    (b)  Kansas RSA-3 (CMA 430);

    (c)  Kansas RSA-4 (CMA 431);

    (d)  Kansas RSA-8 (CMA 435);

    (e)  Kansas RSA-9 (CMA 436);

    (f)  Kansas RSA-10 (CMA 437);

    (g)  Kansas RSA-14 (CMA 441);

    (g)  Nebraska RSA-2 (CMA 534);

    (h)  Nebraska RSA-3 (CMA 535);

    (i)  Nebraska RSA-4 (CMA 536);

(j) Nebraska RSA-5 (CMA 537);

(k) Nebraska RSA-6 (CMA 538);

(l) Nebraska RSA-7 (CMA 539);

(m) Nebraska RSA-8 (CMA 540);

(n) Nebraska RSA-9 (CMA 541); and

(o) Nebraska RSA-10 (CMA 542);

provided that ALLTEL may retain all of the PCS spectrum currently held by Western Wireless in

each of these RSAs and provided that ALLTEL need not divest the assets used solely to operate

Western Wireless' GSM roaming business, including GSM roaming contracts and equipment.

Wireless Business Divestiture Assets shall include, without limitation, all types of real

and personal property, monies and financial instruments, equipment, inventory, office furniture,

fixed assets and furnishings, supplies and materials, contracts, agreements, leases, commitments,

spectrum licenses issued by the FCC and all other licenses, permits and authorizations, true

operational support systems, cell sites, network infrastructure, switches, customer support and

billing systems, interfaces with other service providers, business and customer records and

information, customer contracts, customer lists, credit records, accounts, and historic and current

business plans which relate primarily to the wireless business being divested, as well as any

patents, licenses, sub-licenses, trade secrets, know-how, drawings, blueprints, designs, technical

and quality specifications and protocols, quality assurance and control procedures, manuals and

other technical information defendants supply to their own employees, customers, suppliers,

agents, or licensees, and trademarks, trade names and service marks or other intellectual property,

including all intellectual property rights under third-party licenses that are capable of being

4

transferred to an Acquirer either in their entirety, for assets described in (1) below, or through a

license obtained through or from Western Wireless, for assets described in (2) below; provided

that defendants shall only be required to divest Multi-line Business Customer contracts, if the

primary business address for that customer is located within any of the sixteen (16) license areas

described herein, and further, any subscribers who obtain mobile wireless telecommunications

services through any such contract retained by defendants and who are located within the sixteen

(16) geographic areas identified above, shall be given the option to terminate their relationship

with defendants, without financial cost, within one year of the closing of the Transaction.

Defendants shall provide written notice to these subscribers within forty-five (45) days after the

closing of the Transaction of the option to terminate.

　　　These divestitures of the Wireless Business Divestiture Assets shall be accomplished by:

　　　　　(1) transferring to the Acquirers the complete ownership and/or other rights to the

assets (other than those assets used substantially in the operations of Western Wireless' overall

wireless telecommunications services business which must be retained to continue the existing

operations of the wireless properties that defendants are not required to divest, and that either are

not capable of being divided between the divested wireless businesses and those not divested, or

are assets that the defendants and the Acquirer(s) agree, subject to approval of plaintiff, shall not

be divided); and

　　　　　(2) granting to the Acquirer(s) an option to obtain a non-exclusive, transferable

license from defendants for a reasonable period, subject to approval of plaintiff, at the election of

an Acquirer to use any of Western Wireless' retained assets under paragraph (1) above, used in

the operation of the wireless telecommunications services business being divested, so as to

enable the Acquirer to continue to operate the divested mobile wireless telecommunications services business without impairment. Defendants shall identify in a schedule submitted to plaintiff and filed with the Court, as expeditiously as possible following the filing of the Complaint and in any event prior to any divestitures and before the approval by the Court of this Final Judgment, any intellectual property rights under third-party licenses that are used by the mobile wireless telecommunications services businesses being divested but that defendants could not transfer to an Acquirer entirely or by license without third-party consent, and the specific reasons why such consent is necessary and how such consent would be obtained for each asset.

## II. OBJECTIVES

The Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Divestiture Assets for the purpose of preserving viable competitors in the provision of mobile wireless telecommunications services in order to remedy the effects that plaintiff alleges would otherwise result from ALLTEL's acquisition of Western Wireless. This Preservation of Assets Stipulation and Order ensures, prior to such divestitures, that competition is maintained during the pendency of the ordered divestitures, and that the Divestiture Assets remain ongoing business concerns and the Divestiture Assets remain economically viable. The Divestiture Assets will remain, as provided herein, preserved, independent and uninfluenced by defendants.

## III. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action and each of the parties hereto, and venue of this action is proper in the United States District Court for the District of

6

Columbia. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18.

## IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a proposed Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the plaintiff has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court.

B. Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C. Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Preservation of Assets Stipulation and Order.

D. This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

7

E.  In the event (1) plaintiff has withdrawn its consent, as provided in Section IV.A above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

F.  Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. **MANAGEMENT TRUSTEE**

A.  Plaintiff nominates David S. Turetsky as Management Trustee in this case, and defendants have no objection to his immediate appointment by this Court.  Accordingly, this Court appoints David S. Turetsky as Management Trustee to serve as manager of the Divestiture Assets until the Divestiture Assets are sold or transferred to a Divestiture Trustee pursuant to Section V of the proposed Final Judgment.  Nothing in this Stipulation shall be interpreted to prevent the Management Trustee from becoming the Divestiture Trustee pursuant to Section V of the proposed Final Judgment.

B.  Prior to the closing of the Transaction, defendants shall enter into a trust agreement with David S. Turetsky, subject to the approval of plaintiff in its sole discretion, that will grant the rights, powers, and authorities necessary to permit him to perform the duties and

8

responsibilities of the Management Trustee pursuant to this Stipulation. The trust agreement

shall enable him to assume all rights, powers, and authorities necessary to perform his duties and

responsibilities, pursuant to this Stipulation and the proposed Final Judgment and consistent with

their purposes. David S. Turetsky or any other subsequently appointed Management Trustee

shall serve at the cost and expense of defendants, on such terms and conditions as plaintiff

approves, with a fee arrangement that is reasonable in light of the person's experience and

responsibilities.

C. The Management Trustee will have the following powers and responsibilities with

respect to the Divestiture Assets:

(1) the Management Trustee will have the power to manage the Divestiture

Assets in the ordinary course of business consistent with this Stipulation. Only with the prior

written approval of plaintiff, may the Management Trustee make any decision, take any action, or

enter any transaction that is outside the ordinary course of business;

(2) the Management Trustee shall have a duty, consistent with the terms of this

Stipulation and the proposed Final Judgment, to monitor the organization of the Divestiture

Assets; manage the Divestiture Assets in order to maximize their value so as to permit

expeditious divestitures in a manner consistent with the proposed Final Judgment; maintain the

independence of the Divestiture Assets from defendants; control and operate the Wireless

Business Divestiture Assets to ensure that the Wireless Business Divestiture Assets remain an

independent, ongoing, economically viable competitor to the other mobile wireless

telecommunications services providers; manage the Cellular One Group Assets in a manner so as

to maintain the business and value of the intellectual property including trademarks and service

9

marks; and assure defendants' compliance with their obligations pursuant to this Stipulation and the proposed Final Judgment;

(3) the Management Trustee shall have the authority to retain, at the cost and expense of defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Management Trustee's duties and responsibilities;

(4) the Management Trustee and any consultants, accountants, attorneys, and any other persons retained by the Management Trustee, shall have full and complete access to all personnel, books, records, documents, and facilities of the Divestiture Assets or to any other relevant information as the Management Trustee may reasonably request, including, but not limited to, all documents and records kept in the normal course of business that relate to the Divestiture Assets. Defendants shall develop such financial or other information as the Management Trustee may request and shall cooperate with the Management Trustee. Defendants shall take no action to interfere with or impede the Management Trustee's ability to monitor defendants' compliance with this Stipulation and the proposed Final Judgment or otherwise to perform his duties and responsibilities consistent with the terms of this Stipulation and the proposed Final Judgment;

(5) the Management Trustee will ensure that the Divestiture Assets shall be staffed with sufficient employees to maintain their viability and competitiveness. To the extent that any employee whose principal responsibilities relate to the Divestiture Assets leaves or has left the Divestiture Assets prior to divestiture of the Divestiture Assets, the Management Trustee

10

may replace departing or departed employees with persons who have similar experience and expertise or determine not to replace such departing or departed employees; and

(6) thirty (30) days after the Management Trustee has been appointed by the Court, and every thirty (30) days thereafter until the Divestiture Assets are either transferred to an Acquirer or to the Divestiture Trustee, the Management Trustee shall report in writing to the plaintiff concerning the efforts to accomplish the purposes of this Stipulation and the proposed Final Judgment. Included within that report shall be the Management Trustee's assessment of the extent to which the Divestiture Assets are meeting (or exceeding) their projected goals as are reflected in existing or revised operating plans, budgets, projections or any other regularly prepared financial statements and the extent to which defendants are fulfilling their responsibilities under this Stipulation and the proposed Final Judgment.

D. The following limitations shall apply to the Management Trustee:

(1) the Management Trustee shall not be involved, in any way, in the operations of the other businesses of defendants;

(2) the Management Trustee shall have no financial interests affected by defendants' revenues, profits or profit margins, except that the Management Trustee's compensation for managing the Divestiture Assets may include economic incentives dependent on the financial performance of the Divestiture Assets provided that those incentives are consistent with the objectives of this Stipulation and the proposed Final Judgment and are approved by plaintiff; and

(3) the Management Trustee shall be prohibited from performing any further work for defendants for two (2) years after the close of the divestiture transactions.

11

E.  Defendants and the Management Trustee will take all reasonable efforts to preserve the confidentiality of information that is material to the operation of either the Divestiture Assets or defendants' businesses.  Defendants' personnel supplying services to the Divestiture Assets pursuant to this Stipulation must retain and maintain the confidentiality of any and all confidential information material to the Divestiture Assets.  Except as permitted by this Stipulation and the proposed Final Judgment, such persons shall be prohibited from providing, discussing, exchanging, circulating or otherwise furnishing the confidential information of the Divestiture Assets to or with any person whose employment involves any of defendants' businesses, except as necessary to fulfill the purposes of this Stipulation and the proposed Final Judgment.

F.  If in the judgment of the Management Trustee, defendants fail to provide the services listed in Section VI of this Stipulation to the satisfaction of the Management Trustee, upon notification to defendants and approval by plaintiff, the Management Trustee may engage third parties unaffiliated with the defendants to provide those services for the Divestiture Assets, at the cost and expense of defendants, provided that defendants may have reasonable access to information to satisfy themselves that after the services have been provided, the Divestiture Assets are in compliance with all applicable laws, rules, and regulations.

G.  At the option of the Management Trustee, defendants may also provide other products and services, on an arms-length basis provided that the Management Trustee is not obligated to obtain any other product or service from defendants and may acquire any such products or services from third parties unaffiliated with defendants.

12

H.  If the Management Trustee ceases to act or fails to act diligently and consistently with

the purposes of this Stipulation and the proposed Final Judgment, if the Management Trustee

proposed by plaintiff is not approved by this Court or resigns, or if for any other reason the

Management Trustee ceases to serve in his or her capacity as Management Trustee, the United

States may select a substitute Management Trustee.  In this event, plaintiff will identify to

defendants the individual or entity it proposes to select as Management Trustee.  Defendants

must make any such objection to this selection within five (5) business days after plaintiff

notifies defendants of the Management Trustee's selection.  Upon application of the United

States, the Court shall approve and appoint a substitute Management Trustee.  Within five (5)

business days of such appointment, defendants shall enter into a trust agreement with the

Management Trustee subject to the approval of plaintiff in its sole discretion as described in

Section V.B of this Stipulation.

## VI.  PRESERVATION OF ASSETS

Until the divestitures required by the proposed Final Judgment have been accomplished,

except as otherwise approved in advance in writing by plaintiff:

A.  Defendants and the Management Trustee shall preserve, maintain, and continue to

support the Divestiture Assets, take all steps necessary to manage the Divestiture Assets in order

to maximize their revenue, profitability and viability and permit expeditious divestitures in a

manner consistent with this Stipulation and the proposed Final Judgment.

B.  The Wireless Business Divestiture Assets shall be operated by the Management

Trustee as part of an independent, ongoing, economically viable competitive business to other

13

mobile wireless telecommunications services providers operating in the same license area. The Cellular One Group Assets shall be managed by the Management Trustee so that the value of the Cellular One brand is maintained, and all obligations under existing licensing agreements are fulfilled, and these assets are maintained or increased in value. Defendants and the Management Trustee shall take all steps necessary to ensure that:

(1) the management, sales, and operations of the Divestiture Assets are independent from defendants' other operations; provided however, that at the request of the Management Trustee, defendants shall include the marketing, pricing and sales of the mobile wireless telecommunications services generated by the Wireless Business Divestiture Assets in the license areas served by the Wireless Business Divestiture Assets within its marketing, promotional, and service offerings, in the ordinary course of business, in any national, regional, and local marketing programs. The defendants shall not display advertising announcing or describing benefits of the Transaction in the sixteen (16) divestiture markets. Nothing in this Section shall prohibit the Management Trustee from developing his own reasonable marketing, sales, pricing or promotional offers, which shall be funded and supported by defendants;

(2) the Wireless Business Divestiture Assets are maintained by adhering to normal and planned repair, capital improvement, upgrade and maintenance schedules;

(3) the management of the Divestiture Assets will not be influenced by defendants;

(4) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning marketing, pricing or sales of mobile wireless

14

telecommunications services or the Cellular One mark generated by the Divestiture Assets will

be kept separate and apart from defendants' other operations; and

   (5)  the management of the Divestiture Assets acts to maintain and increase the

sales and revenues of the Divestiture Assets, and maintain, at a minimum, at previously approved

levels for 2005 and 2006, whichever are higher, all promotional, advertising, sales, marketing,

and technical support for the Divestiture Assets.

  C.  Defendants shall provide sufficient working capital and lines and sources of credit as

deemed necessary by the Management Trustee to continue to maintain the Divestiture Assets

consistent with this Stipulation.

  D.  Defendants shall resolve all outstanding obligations related to the Divestiture Assets,

including agent and employee compensation within thirty (30) days of closing the Transaction.

  E.  Except (1) as recommended by the Management Trustee and approved by plaintiff, or

(2) as part of a divestiture approved by plaintiff in accordance with the terms of the proposed

Final Judgment, defendants shall not remove, sell, lease, assign, transfer, pledge or otherwise

dispose of any of the Divestiture Assets outside the ordinary course of business.

  F.  The Management Trustee, with defendants' cooperation consistent with this

Stipulation and the proposed Final Judgment, shall maintain, in accordance with sound

accounting principles, separate, accurate, and complete financial ledgers, books and records that

report on a periodic basis, such as the last business day of every month, consistent with past

practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.  As

part of the defendants' cooperation, at least five (5) days prior to the closing of the Transaction,

defendants will provide to the Management Trustee and plaintiff three (3) separate financial

reports for the divestiture markets in each of Arkansas, Kansas, and Nebraska, and separately for

each of the sixteen (16) divested RSAs, detailed management reports describing existing and

future plans for human resources, marketing, network upgrades and capital expenditures.

Defendants will produce these reports in a form and with content that is acceptable to the

Management Trustee and plaintiff.

G.  As part of the defendants' cooperation, at least five (5) days prior to the closing of the

Transaction, defendants will provide all reports regularly prepared by defendant Western

Wireless that measure sales activity in each of the sixteen (16) divestiture markets, including but

not limited to the Daily Activity Report and the Activating Revenue Report, that are in a form

and with content acceptable to the Management Trustee and plaintiff.  If these reports cannot be

produced for each of the sixteen (16) divestiture markets, these reports should cover the smallest

geographic area that includes the divestiture markets as is technically feasible.  If the Transaction

has not closed within seven (7) days after the filing of the Complaint, on that day defendants will

submit to plaintiff and the Management Trustee current copies of these reports.

H.  Defendants shall take no action that would jeopardize, delay, or impede the sale of the

Divestiture Assets nor shall defendants take any action that would interfere with the ability of any

Divestiture Trustee appointed pursuant to the proposed Final Judgment to operate and manage

the Divestiture Assets or to complete the divestitures pursuant to the proposed Final Judgment to

an Acquirer(s) acceptable to plaintiff.

I.  Within seven (7) days of the filing of the Complaint or prior to the closing of the

Transaction, whichever is sooner, defendants shall appoint (and notify plaintiff and the

Management Trustee of their names and titles) sufficient employees for each of the Wireless

16

Business Divestiture Assets and the Cellular One Group Assets, who are familiar with and have had responsibility for the management, operation, marketing, and sales of the Divestiture Assets, to assist the Management Trustee with his duties and responsibilities hereunder.

J.  Except for employees (1) whose primary employment responsibilities relate to the Divestiture Assets, or (2) who are involved in providing support services to the Divestiture Assets pursuant to Sections V and VI of this Stipulation and Section V of the proposed Final Judgment, defendants shall not permit any other of their employees, officers, or directors to be involved in the operations of the Divestiture Assets.

K.  Except as required by law in the course of (1) complying with this Stipulation and the proposed Final Judgment; (2) overseeing compliance with policies and standards concerning the safety, health, and environmental aspects of the operations of the Divestiture Assets and the integrity of their financial controls; (3) defending legal claims, investigations or enforcement actions threatened or brought against the Divestiture Assets; or (4) obtaining legal advice, defendants' employees (excluding employees (a) whose primary employment responsibilities relate to the Divestiture Assets, or (b) who are involved in providing support services to the Divestiture Assets pursuant to Sections V and VI of this Stipulation and Section V of the proposed Final Judgment) shall not receive, or have access to, or use any material confidential information, not in the public domain, of the Divestiture Assets.  Defendants may receive aggregate financial information relating to the Divestiture Assets to the extent necessary to allow defendants to prepare the defendants' consolidated financial reports, tax returns, reports required by securities laws, and personnel reports.  Any such information that is obtained pursuant to this subparagraph shall be used only for the purposes set forth in this subparagraph.

17

L. Defendants may offer a bonus or severance to employees whose primary employment responsibilities relate to the Divestiture Assets, that continue their employment until divestiture (in addition to any other bonus or severance to which the employees would otherwise be entitled).

M. Until the Divestiture Assets are divested to an Acquirer(s) acceptable to plaintiff, defendants shall provide to the Divestiture Assets, at no cost, support services needed to maintain the Divestiture Assets in the ordinary course of business, including but not limited to:

(1) federal and state regulatory policy development and compliance;

(2) human resources administrative services;

(3) environmental, health and safety services, and developing corporate policies and insuring compliance with federal and state regulations and corporate policies;

(4) preparation of tax returns;

(5) financial accounting and reporting services;

(6) audit services;

(7) legal services;

(8) routine network maintenance, repair, improvements, and upgrades;

(9) switching, call completion, and other services necessary to allow subscribers to use mobile wireless services and complete calls;

(10) billing, customer care and customer service related functions necessary to maintain the subscriber account and relationship;

(11) for each retail and indirect sales outlet, a sixty (60) day supply of inventory, including both handsets and accessories, branded as directed by the Management Trustee, based on each outlet's average sales for the prior two (2) months, and if the Management Trustee requests, ALLTEL shall make available in sufficient quantities, branded as directed by the Management Trustee, handsets and accessories, introduced by ALLTEL in similar markets that are compatible with the network in the sixteen (16) Divestiture Markets;

(12) the individual financial reports described in Section VI.F shall be provided on a monthly basis; and

(13) the sales reports described in Section VI.G shall be provided on a daily basis.

N. Prior to the closing of the Transaction, defendants will notify plaintiff in writing of the steps defendants have taken to comply with this Section. If the Transaction has not closed within seven (7) days after the filing of the Complaint, on that day defendants will submit to plaintiff and the Management Trustee a detailed statement of how defendants will comply with Section VI.A prior to the closing of the Transaction, including but not limited to: (1) marketing plans for the sale of mobile wireless telecommunications services by the mobile wireless business to be divested, including customer retention plans and promotions; (2) the designation of a management team who will have responsibility for and manage the Divestiture Assets prior to the closing of the Transaction, identifying any changes from pre-filing staffing; (3) plans for retention of employees and payment of retention bonuses to employees whose primary duties related to the mobile wireless business to be divested; and (4) plans for network maintenance, repair improvements, and upgrades of the Wireless Divestiture Assets.

19

O. This Preservation of Assets Stipulation and Order shall remain in effect until consummation of the divestitures required by the proposed Final Judgment or until further order of the Court.

20

Dated: July 6, 2005

Respectfully submitted,

| FOR PLAINTIFF UNITED STATES | FOR DEFENDANT ALLTEL CORPORATION |
|---|---|
| *Deborah A. Roy* (signature)<br>Deborah A. Roy (D.C. Bar # 452573)<br>Laura R. Starling<br>Hillary B. Burchuk (D.C. Bar # 366755)<br>Matthew C. Hammond<br>Attorneys, Telecommunications & Media<br>Enforcement Section<br>Antitrust Division<br><br>U.S. Department of Justice<br>City Center Building<br>1401 H Street, N.W., Suite 8000<br>Washington, D.C.  20530<br>(202) 514-5621<br>Facsimile: (202) 514-6381 | *Michael L. Weiner* (signature)<br>Michael L. Weiner<br>Brian C. Mohr (D.C. Bar # 385983)<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, New York 10036-6522<br>(212) 735-2632<br><br><br>FOR DEFENDANT WESTERN WIRELESS CORPORATION<br><br>*Ilene Knable Gotts* (signature)<br>Ilene Knable Gotts (D.C. Bar # 384740)<br>Wachtell, Lipton, Rosen & Katz<br>51 W. 52nd Street<br>New York, NY 10019<br>(212) 403-1247 |

## O R D E R

IT IS SO ORDERED by the Court, this day of July, 2005.

_Royce C. Lamberth_
United States District Judge